**Harry P. LOCKLIN and Elmer J. Brant,** general partners doing business under the firm name of **Radiant Color Company, Counter-Plaintiffs,**

v.

**DAY–GLO COLOR CORP.** (formerly Switzer Brothers, Inc.), et al., Counter-Defendants.

**No. 52 C 1198.**

United States District Court,
N. D. Illinois, E. D.

May 6, 1974.

Charles L. Michod, Chicago, Ill., Carl Hoppe, San Francisco, Cal., for Locklin.

Samuel W. Kipnis, Chicago, Ill., Thomas V. Koykka, Arter & Hadden, Thomas J. Gray, Cleveland, Ohio, for Day-Glo Color Corp., and others.

## MEMORANDUM OPINION

DECKER, District Judge.

This matter comes before the court at the end of a long road, extending back to 1952, on counter-plaintiffs' Application for Assessment of Attorneys' Fees.[1] To put this petition in perspective, some background information on this litigation is essential.

### I. History [2]

Day-Glo Color Corporation[3] is engaged in the manufacture and sale of daylight flourescent materials. In October, 1948, after 15 years of preparatory work, Day-Glo began its United States licensing program. Since January, 1949, Harry P. Locklin and Elmer J. Brant, general partners doing business as Radiant Color Company, have competed with Day-Glo in the sale of daylight fluorescent products.

In June, 1952, Day-Glo instituted an action for patent infringement in this

1. The matter has been to the U. S. Court of Appeals for the Seventh Circuit five times and has been the subject of three denials of petitions for writs of certiorari before the U. S. Supreme Court.

2. A substantial portion of this background is derived from the summary given in the opinion of the Seventh Circuit affirming this court's finding of antitrust liability. Locklin v. Day-Glo Color Corp., 429 F.2d 873 (7th Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

3. At the time this action was instituted, the counter-defendant corporation was known as Switzer Brothers, Inc.

court against 16 of Radiant's customers. Although Radiant originally was not named as a defendant, the Company eventually was allowed to intervene and to file an antitrust counterclaim alleging that Day-Glo had violated sections one and two of the Sherman Act, 15 U.S.C. §§ 1, 2, and section three of the Clayton Act, 15 U.S.C. § 14. See Switzer Bros., Inc. v. Locklin, 207 F.2d 483 (7th Cir. 1953), cert. denied, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1954). Day-Glo's infringement action was subsequently dismissed for failure to join indispensable parties. Switzer Bros., Inc. v. Chicago Cardboard Co., 252 F.2d 407 (7th Cir. 1958). The case proceeded to trial upon Radiant's amended counterclaim against Day-Glo and a counterclaim Day-Glo had filed against Radiant, and culminated in a judgment against Day-Glo for violation of the antitrust laws and a dismissal of the latter's counterclaim for lack of evidence. Switzer Bros., Inc. v. Locklin, 297 F.2d 39 (7th Cir. 1961), cert. denied, 369 U.S. 851, 82 S.Ct. 934, 8 L.Ed.2d 9 (1962).

Judgment was entered pursuant to the court's findings and the matter was referred to a special master to ascertain and report on the damages suffered and costs expended by Radiant, plus attorneys' fees.

Extensive discovery and lengthy hearings [4] were had before the master, and, six years after the referral, he reported that Radiant had been injured in the amount of $356,792.91.[5] Pursuant to section 4 of the Clayton Act, 15 U.S. C. § 15, this figure was trebled and judgment was entered for $1,145,378.73, including $75,000 in attorneys' fees. Locklin v. Day-Glo Color Corp., CCH 1969 Tr. Cas. ¶ 72,705, at 86,524, (N.D. Ill.1969), aff'd, 429 F.2d 873 (7th Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

## II. The Present Application

In this application, Radiant petitions for a further allowance of attorneys' fees for services rendered before the master on the accounting for damages, in this court on objections to the master's report, and before the Seventh Circuit on appeal and the Supreme Court on petition for a writ of certiorari. Several aspects of the present request are worthy of note before examining the merits of the petition.

First, the establishment of Day-Glo's antitrust liability and the protection of that judgment through the denial of certiorari in 1962, entailed 2,004.33 hours of endeavor on the part of Radiant's counsel, for which the $75,000 fee previously mentioned was awarded. By contrast, the instant application requests, *inter alia,* $315,888.50 for 3,827.-43 hours spent proving up the damages. Second, since February 4, 1971, when the judgment was paid in full, Radiant's lawyers have spent an additional 171 hours preparing and presenting their statement for fees.[6] For these efforts alone, Radiant seeks an additional $18,707.50. Thus, the total claim before the court amounts to $338,446,[7] which, when added to the $75,000 fee previously granted, would produce an aggregate of $413,446 in attorneys' fees, against only $356,792 in actual damages.

Finally, the present application is actually the third fee compilation put together by Radiant. The original computation was made in a petition presented

---

4. Proceedings before the master entailed three discovery expeditions, 43 days of trial, and five days of oral argument. The trial record consists of approximately 7500 pages, excluding 282 exhibits comprising 2000 pages. Finally, hundreds of pages of briefs also were filed.

5. Included within this damage figure were attorneys' fees totaling $42,136.91 expended by Radiant to counteract or defend against various actions of Day-Glo. These fees were trebled as part of the damage award.

6. As Day-Glo points out, based upon a five-day week and an ordinary billable work day of six hours, this is the equivalent of more than 10 weeks of work.

7. Day-Glo contends that the maximum award for the services in question should be $60,000.

by Radiant in 1969, for its attorneys' work through the proceedings in this court on objections to the master's report. In those documents, Radiant's senior counsel enumerated 3,397.72 hours of lawyers' time and calculated the "total time value" at "accustomed billing rates" to be $127,327.05. Notably, the fee schedule contained therein listed hourly charges ranging from $40 in 1963–64 to $50 in 1967–69 for lead counsel and $25 in 1962–63 to $40 in 1967–69 for associates. A second tabulation, covering, in addition, the period through the denial of certiorari in 1971, and presented to Day-Glo for purposes of settlement of the fees question, contained 444 additional hours and a dollar figure of $148,831.15.[8] The hourly charges for 1970–71 were listed as $60 for senior counsel and $50 for associates. In the present request, however, the former billing rates have been totally abandoned and an entirely new schedule adopted. Under the current petition, the hourly charges have ballooned to a flat rate of $100 for senior counsel and $50 for associates.

### III. A Reasonable Attorneys' Fee

#### A. General Standards for Awarding Attorneys' Fees

■ Section 4 of the Clayton Act specifically provides that any person injured by antitrust violations may recover "a reasonable attorney's fee". 15 U.S.C. § 15. Although courts have long assessed fees under this statute, the determination of an appropriate award in a specific case is frequently a "delicate, embarassing and disturbing" task. Milwaukee Towne Corp. v. Loew's, Inc., 190 F.2d 561, 569 (7th Cir. 1951). See Courtesy Chevrolet, Inc. v. Tennessee Walking Horse B. & E.A., 393 F.2d 75, 77 (9th Cir. 1968). Over-generosity, in particular, must be guarded against so

as to maintain public respect for and confidence in the organized bar.[9] However, courts must discharge this obligation mindful that the "apparent purpose behind this part of section 4 [is] to award the successful plaintiff a reasonable attorney's fee so that his treble damage recovery [is] not . . . unduly diminished by the payment to his attorneys." Perkins v. Standard Oil Co., 474 F.2d 549, 553 (9th Cir.), cert. denied, 412 U.S. 940, 93 S.Ct. 2778, 37 L. Ed.2d 400 (1973), quoting, Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61, 88 (1st Cir. 1970).

■ In calculating the reasonable fee to be awarded, courts have generally considered: (1) whether counsel had the benefit of a prior judgment or decree in a case brought by the government; (2) the standing of counsel at the bar; (3) time and labor spent; (4) magnitude and complexity of the litigation; (5) the responsibilities undertaken; (6) the amount recovered; and (7) the court's knowledge of the amount and quality of the work done. See Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc., 481 F.2d 1045 (2d Cir. 1973); Perkins v. Standard Oil Co., 474 F.2d 549 (9th Cir.), cert. denied, 412 U.S. 940, 93 S.Ct. 2778, 37 L.Ed.2d 400 (1973); Trans World Airlines, Inc. v. Hughes, 312 F.Supp. 478 (S.D.N.Y.1970), modified, 449 F.2d 51 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); Hanover Shoe, Inc. v. United Shoe Mach. Corp., 245 F.Supp. 258 (M.D.Pa.1965), vacated on other grounds, 377 F.2d 776 (3d Cir. 1967), aff'd in part, rev'd in part on other grounds, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); Noerr Motor Freight, Inc. v. Eastern Railroad Pres. Conf., 166 F.Supp. 163 (E.D.Pa.1958), aff'd 273 F.2d 218 (3d Cir. 1959), rev'd on other grounds, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); Colson v.

---

8. This represents an average hourly rate of $38.94.

9. This court has previously noted that excessive fees may render attorneys "vulnerable

to the criticism expressed in the Italian proverb, '[a] lawsuit is a fruit tree planted in a lawyer's garden.'" State of Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221, 224 (N.D.Ill.1972).

Hilton Hotels Corp., 59 F.R.D. 324 (N.D.Ill.1972); State of Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221 (N.D.Ill.1972).

■ However, these factors are merely general guidelines. There is no requirement that a particular weight be attached to each factor under a precise mathematical equation. Each case will differ to some extent from every other case as to the relative importance of these elements; indeed, in particular litigation, a court may legitimately disregard any one or a number of the factors. Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc., *supra*, 481 F.2d at 1051. In the final analysis, the assessment of a just and reasonable attorneys' fee rests in the sound discretion of the court to be determined with reference only to the case before it. Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 223 (9th Cir. 1964); Vandervelde v. Put and Call Brokers & Dealers Ass'n, 344 F.Supp. 157, 160 (S.D.N.Y.1972); Trans World Airlines, Inc. v. Hughes, *supra*, 312 F.Supp. at 480.

■ After careful consideration of the foregoing guidelines, the services rendered, and the evidence, arguments, and briefs relating to this petition, this court has concluded that the amount requested by Radiant is exorbitant and should be substantially reduced.

*B. The Appropriate Rate of Compensation*

■ Initially, this court deems the hourly rates upon which the present application is based to be entirely inappropriate. Radiant is seeking to have its attorneys compensated at current rates

for services performed in the period 1962–1970. In the context of an inflationary period, adoption of this approach would result in a windfall to petitioners and might encourage dilatory fee applications. Courts should be entitled to assess the value of legal services as of the time they were rendered.[10] Accordingly, so far as this application is concerned, the services will be valued and the fees assessed on the basis of the fee schedules accompanying the first two tabulations.[11]

*C. The Damage Figure to be Considered*

■ The parties differ as to whether the reasonableness of the attorneys' fees is to be measured against the single or treble damage figure. Keeping in mind that the amount recovered is only one of several elements to be considered, a review of the cases demonstrates that the smaller the actual damages, the more likely it is for courts to give greater weight to other' factors in assessing attorneys' fees. In those cases in which the allowance of fees has been equal to or greater than the actual damages, the latter figure has been a mere fraction of the injury proven here. See, e. g., Albrecht v. Herald Co., 321 F.Supp. 99 (E.D.Mo.1970), aff'd in part, rev'd in part on other grounds, 452 F.2d 124 (8th Cir. 1971) (damages—$39,939; fees—$50,000); Advance Business Systems & Supply Co. v. SCM Corp., 287 F.Supp. 143 (D.Md.1968), aff'd and remanded, 415 F.2d 55 (4th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970) (damages—$16,714; fees—$35,875); Courtesy Chevrolet, Inc. v. Tennessee Walking Horse B.

10. On a somewhat similar topic, the Seventh Circuit rejected Radiant's claim that the judgment should be adjusted upward in an amount equal to the inflationary shrinkage occurring since the period of Radiant's injuries. See Locklin v. Day-Glo Color Corp., *supra*, 429 F.2d at 876.

11. Even under current fee schedules, the hourly rates urged upon the court appear to be above the average charged in this city for

similar work. A recent study undertaken by my colleague, Judge Hubert Will, disclosed that, although a number of Chicago's largest and best-known law firms charge $100 per hour, the average hourly rates were $85 for senior trial partners, $62 for junior trial partners, and $41 for associates with two years experience. Liebman v. J. W. Petersen Coal & Oil Co., 63 F.R.D. 684 (consolidated cases) (N.D.Ill., 1974).

& E.A., *supra* (damages—$3,400; fees —$10,000). The quite reasonable proposition to be gathered from these cases is that, where the damages recovered in a private antitrust action are relatively small, it is not necessarily an abuse of discretion to award attorneys' fees exceeding the amount of single damages. The injury proven here is nowhere near the range of damages found in those or other cases relied upon by Radiant and the court does not deem them to be controlling.

Moreover, in Milwaukee Towne Corp. v. Loew's, Inc., *supra* where actual damages of approximately $432,000 were proven, the court noted that:

> "the result may be properly taken into consideration in fixing a reasonable attorney fee, [but] we do think in a case of this character that *the result should be measured by the amount of damages found rather than by the judgment.* Two-thirds of the judgment is the penalty imposed by Congress and automatically attaches to the damages found." 190 F.2d at 571 (emphasis added).

This approach has since been followed in this circuit and appears to be the majority rule in cases where substantial damage judgments are entered. See Clapper v. Original Tractor Cab Co., 165 F.Supp. 565 (S.D.Ind.1958), aff'd, 270 F.2d 616 (7th Cir. 1959), cert. denied, 361 U.S. 967, 80 S.Ct. 592, 4 L.Ed.2d 547 (1960); Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 104 F.2d 846 (8th Cir. 1952), cert. denied, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952); Acme Precision Products, Inc. v. American Alloys Corp., 347 F.Supp. 376 (W.D.Mo.1972).

■ Furthermore, the statute directs that only actual damages are to be trebled. To establish an inflexible rule whereby attorneys' fees are to be determined with reference to the trebled damage award might, at least in some cases, have the effect of trebling the attorneys' fees. Such a result is implicitly to be avoided under the statutory language.

## D. The Hours to be Considered

Day-Glo maintains that a substantial portion of the hours listed in the petition should be disregarded on the ground that they represent time during which counsel was engaged in activities outside the scope of endeavors compensable under the statute. In this regard, Day-Glo complains specifically of the hours charged for clerical work, monitoring documents, abstracting the record before the master, luncheons, travel time, making up the present application, and presenting damage claims that were ultimately rejected.

■ With respect to the latter point, it is well-settled that attorneys' fees are awarded solely as a concomitant of damages. If no damages are established, no award of fees may be made, regardless of any other relief granted. See, *e. g.,* In re Multidistrict Vehicle Air Pollution Litigation, 481 F.2d 122, 130 n. 12 (9th Cir. 1973); Byram Concretanks, Inc. v. Warren Concrete Products Co., 374 F.2d 649, 651 (3d Cir. 1967); Trans World Airlines, Inc. v. Hughes, *supra*, 312 F.Supp. at 482; Union Leader Corp. v. Newspapers of New England, Inc., 218 F.Supp. 490, 491, 493 (D.Mass. 1963), vacated on other grounds, 333 F. 2d 798 (1st Cir.), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). However, not all the time spent on seeking to recover damages is relevant. "The fee awarded should not include compensation for time expended upon theories . . . or overdrawn items of damage[s] ultimately rejected by the trier of fact." Vandervelde v. Put and Call Brokers & Dealers Ass'n., *supra* (citing cases). See Advance Business Systems & Supply Co. v. SCM Corp., *supra*, 415 F.2d at 70; Union Leader Corp. v. Newspapers of New England, Inc., *supra*, 218 F.Supp. at 490–491. Thus some consideration should be given to the fact that included in the inordinate amount of time designated in this petition are hours that

must have been devoted to issues and theories that were rejected or not proven, some of which were pressed through the petition to the Supreme Court. Neither party, however, has specifically enumerated which hours are to be discounted on this ground.[12] Since it appears from the statements of counsel and the time sheets submitted in support of the request that such attribution would be difficult, if not impossible, the court has decided to exercise a careful judgment as to the hours to be reduced on this basis.

▮▮▮ Perkins v. Standard Oil Co., *supra*, is the only case cited by Radiant, or found by the court in which fees have been allowed for time and effort spent in fee-application proceedings. The court in that case noted that:

"[t]he sum in question [$14,180] reflected approximately 338 hours, spent for the most part in *taking depositions, collecting affidavits*, presenting arguments, and participating in the discussion of factual issues with the judge in *two hearings*." 474 F.2d at 555 (emphasis added).

Thus, the circumstances surrounding the fee application were substantially more onerous and time-consuming than those here. No depositions were taken and only one affidavit in addition to those of Radiant's attorneys of record was submitted. Moreover, it would appear that time devoted to compiling and presenting the bill is beyond the scope of efforts for which fees are to be allowed. By the time attorneys begin to compose and prosecute their fee applications, their clients' damages already have been determined. It is thus difficult for this court to conclude that these activities are "services rendered in connection with the damages recovered." Union Leader Corp. v. Newspapers of New England, Inc., *supra*, 218 F.Supp. at 491. Accordingly, the hours spent by Radiant's attorneys in compiling their fees as evidenced by the present petition, will be disregarded as outside the statutory allowance.

In light of the foregoing, it is clear that Radiant's second computation is the most relevant to those proceedings since it compiled hours through the last denial of certiorari and valued the services at rates in existence during the time those services were performed.[13] However, even this tabulation contains excess hours and time which should not qualify for full compensation. As mentioned previously, Day-Glo has specifically challenged the following, while indicating generally that other hours also should be subtracted:

| | | |
|---|---|---|
| Clerical work | 111.95 | hours |
| Abstracting record | 219.50 | " |
| Travel time | 253.50 | " |
| Luncheons | 62.00 | " |
| Monitoring documents | 28.00 | " |
| | 674.95 | hours. |

▮▮▮ This court agrees that most of these hours should be excluded. Radiant's own expert testified under cross-examination that he would exclude work of a clerical value from the bill; endeavors of this character should be attributed to an attorney's overhead, not to his client. Although the master prepared an abstract which was paid for by both parties, Radiant's attorneys also developed their own abstract. Such efforts were of questionable necessity because, pursuant to the master's instructions, only his abstract was used in the briefs. Radiant's expert also testified that he had never charged for travel

---

12. Although Mr. Hoppe specified the time spent on the suggestions to the master's report, the time was not broken down with respect to issues won and lost, and the hours spent preparing and presenting these respective questions to the master were not enumerated.

13. Although, at the hearing on fees, Mr. Hoppe maintained that this tabulation was not intended to constitute his determination of a reasonable attorneys' fee, the document's characterization as "total time value" at "accustomed billing rates" certainly justifies its use by the court as a guide in assessing a reasonable fee.

time as such, whereas Mr. Hoppe stated that it was his practice to do so. However, there is no express indication how many, if any, of these travel hours elapsed during the regular business day or were spent in legal work, either of which could support some fee for the time. The monitoring of documents occurred despite the master's direction that all documents were to be delivered. There would not appear to be much reason for a full lawyer's fee on this matter. In explanation of the luncheon time charged, Mr. Hoppe declared that his custom is to record only the amount of time spent on the case. There is no evidence that this practice was not followed here. Thus, the 62 hours of luncheon time must be accepted. These considerations support a reduction of 613 hours from the petition.

Besides the grounds for making the reductions previously alluded to, there is no basis upon which to reject the general representation of Radiant's attorneys that all the hours were reasonably necessary to prosecute the claims for antitrust damages. Each hour is accounted for. Although this court might be inclined to say, as a matter of hindsight, that some of the legal services may have been unnecessary, Day-Glo offered no testimony or other evidence to challenge the propriety of the services or to support its assertion that the hours contained in the second schedule were exorbitant. Moreover, the master noted that the case, although complex, had been well-tried and well-argued, and that the pleadings were of high quality.

### IV. Conclusion

Under the circumstances of this case and considering all relevant factors, this court has concluded that Radiant is entitled to a further fee in the amount of $100,000 as fair and reasonable compensation for the services in question. With the $75,000 already awarded and paid, the total fees will amount to about 50% of the single damages recovered through petitioners' efforts, well within the range of fees granted in similar cases.