**STATE OF ILLINOIS, Plaintiff-Appellee,**

v.

**SANGAMO CONSTRUCTION CO. and J. L. Simmons Company, Inc., Defendants-Appellants.**

**Nos. 80–1761, 80–2275.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1981.

Decided July 30, 1981.

Richard A. Makarski, Chicago, Ill., Paul E. Adami, Springfield, Ill., for defendants-appellants.

Stephen P. Juech, Asst. Atty. Gen., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This appeal concerns the propriety of the district court's award of attorneys' fees and costs, including expert witness fees, to the Illinois Attorney General who successfully pursued this private antitrust action on behalf of the State of Illinois in its proprietary capacity. We affirm the award of attorneys' fees, but reverse and remand the award of costs to be reduced to the extent the amount of expert witness fees awarded exceeds the statutory witness fees set forth in 28 U.S.C. § 1821.

I

Illinois, in its proprietary capacity, brought this suit under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15, against defendants, Sangamo Construction Company and J. L. Simmons Co., Inc., alleging a conspiracy to allocate certain highway construction projects put out for public bids by Illinois on June 23, 1970.[1] At the conclusion of trial, the jury returned a verdict in favor of Illinois. Although Illinois had requested damages of $85,720, the jury awarded only $25,000 in damages. The district court, pursuant to Section 4 of the Clayton Act, trebled the actual damages and awarded Illinois $75,000 in total damages.

The district court also ruled that, pursuant to Section 4 of the Clayton Act, Illinois was entitled to costs of suit, including reasonable attorneys' fees. Consequently, the court held an evidentiary hearing on Illinois' request for an itemization of attorneys' fees and costs. The court granted Illinois' entire request for attorneys' fees totaling $63,285. The court also awarded $16,822.36 as costs of suit, including $5,471.91 for deposition charges, $1,501.47 for copying, $56.00 for charts, $9,777.98 for expert witness costs, and $15.00 for filing fees.

Although defendants filed two notices of appeal, the first from the judgment entered on the jury verdict and the second from the final judgment awarding attorneys' fees and costs, the only issues urged on this appeal concern the award of attorneys' fees and costs to the State of Illinois.

II

Section 4 of the Clayton Act, 15 U.S.C. § 15, entitles a successful private litigant to "recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee."[2]

---

1. Defendants previously had been convicted of federal criminal antitrust violations arising from this bid-rigging.

2. 15 U.S.C. § 15 states that:
 Any person who shall be injured in his business or property by reason of anything

Courts uniformly have held that the award of attorneys' fees and costs to the successful plaintiff under Section 4 is mandatory. *See Baughman v. Cooper-Jarrett, Inc.*, 530 F.2d 529, 531 n.2 (3rd Cir.), *cert. denied*, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976); *Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263, 1267 (N.D.Cal.1979); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 n.5, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978). Furthermore, the determination of what constitutes reasonable attorneys' fees is a matter relegated, in the first instance, to the sound discretion of the trial court, guided by proper standards and due consideration of the unique circumstances of each case. *See infra* II–C.

Defendants argue that these accepted rules for awarding attorneys' fees under Section 4 of the Clayton Act do not apply in this case of first impression involving an award of fees to a state represented by its Attorney General.[3] First, defendants assert that an award of attorneys' fees to a state, which sues in its proprietary capacity and is represented by its Attorney General, is inconsistent with the policy underlying Section 4's provision for attorneys' fees.

Defendants argue, in the alternative, that if a state represented by its Attorney General is entitled to attorneys' fees, then the award of attorneys' fees should be limited to the actual costs incurred by the state, i. e., the salaries of the state lawyers. Finally, defendants argue that the district court abused its discretion by awarding Illinois attorneys' fees which exceed the single damages award.

We disagree with defendants' reasoning. For the reasons detailed below, we affirm the award of attorneys' fees to Illinois as appropriate under Section 4 and within the sound discretion of the district court.[4]

## A

█ It is well-established that a state is a "person" for purposes of establishing a cause of action and jurisdiction to sue under Section 4 of the Clayton Act. *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261, 92 S.Ct. 885, 890, 31 L.Ed.2d 184 (1972); *Georgia v. Evans*, 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942). But, defendants argue that a state, represented by its Attorney General, should not be considered a "person" entitled

---

forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

**3.** No appellate court has addressed the question of whether reasonable attorneys' fees should be awarded to a state, represented by its Attorney General, which prevails under Section 4 for antitrust damages suffered in its proprietary capacity. Several district courts have awarded attorneys' fees to state Attorneys General pursuant to settlements of private antitrust actions. These awards, however, were made pursuant to the equitable fund doctrine, and did not concern Section 4 of the Clayton Act. *See In re Chicken Antitrust Litigation*, 1980–2 Trade Cases ¶ 63,485 at 76,557–58 (N.D. Ga.1980); *In re Sugar Industry Antitrust Litigation*, M.D.L. 201, slip op. at 46–49 (N.D.Cal. 1979); *In re Master Key Antitrust Litigation*, 1978–1 Trade Cases ¶ 61,887 at 73,726–30 (D.Conn.1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F.Supp. 706, 717–18 (D.Minn.1975); *Liebman v. J. W. Petersen Coal & Oil Co.*, 63 F.R.D. 684,

694 (N.D.Ill.1974); *In re Gypsum Cases*, 386 F.Supp. 959, 985–88 (N.D.Cal.1974), *aff'd*, 565 F.2d 1123 (9th Cir. 1977).

The only discussion of this issue by the Seventh Circuit is dicta in *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1130 (7th Cir.), *cert. denied*, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). There, in reversing the district court's approval of a settlement reached in a non-antitrust, private class action suit, the court expressed "some doubt about whether Attorneys General who, of course, are compensated by the public may ever recover attorneys' fees and expenses, . . . ." 594 F.2d at 1130 (footnote omitted). In a footnote, however, the court recognized that the question was "an 'interesting' and apparently open one." 594 F.2d at 1130 n.42. Moreover, the court explicitly refused to decide the question.

**4.** The Attorneys General of 43 states have filed a joint brief as *amici curiae* urging this Court to affirm the award of reasonable attorneys' fees to a state which is represented by its Attorney General. The *amici* also argue that the district court properly awarded attorneys' fees based on prevailing market rates.

to attorneys' fees and costs under the last clause of Section 4 which entitles a prevailing party to "cost of suit, including a reasonable attorney's fee."

A textual analysis of Section 4 lends no support to defendant's reasoning. Section 4 states that "[a]ny person who shall be injured . . . shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15. Nothing in the text suggests that a state, which is a "person" for purposes of suing for treble damages, is not a "person" for purposes of the next clause which allows recovery of costs and attorneys' fees. The "statute makes no distinction between the applicability of the treble damages and attorney's fees provisions therein." *Knutson v. Daily Review, Inc.*, 479 F.Supp. at 1267.

Failing to find textual support in Section 4 for their position, defendants argue that Section 4's silence as to whether attorneys' fees should be awarded to states indicates that Congress did not intend states to receive attorneys' fees for suits brought under Section 4. Defendants point first to 15 U.S.C. § 15c(a)(2), which explicitly allows a state to recover reasonable attorneys' fees following successful prosecution of a *parens patriae* antitrust suit. Defendants then point to 15 U.S.C. § 15a, which limits the recovery by the United States in antitrust actions brought for damages sustained in its proprietary capacity to actual damages and costs of suit, but does not provide for recovery of reasonable attorneys' fees. From this brief statutory review, defendants conclude that the absence of a statutory provision explicitly awarding attorneys' fees to a state which sues for damages sustained in its proprietary capacity means that Congress did not intend states to recover attorneys' fees in suits under Section 4.

Defendants' reasoning is unpersuasive. First, the attempted comparison between 15 U.S.C. § 15a (actions by United States for damages sustained in its proprietary capacity) and 15 U.S.C. § 15 (actions by private parties, including states in their proprietary

capacity) is inappropriate. Congress enacted 15 U.S.C. § 15a in order to allow recovery of actual damages sustained by the United States. *City of Burbank v. General Electric Co.*, 329 F.2d 825, 830 (9th Cir. 1964); *see* S.Rep. No. 619, 84th Cong., 1st Sess. 3 (1955), *reprinted in* [1955] U.S.Code Cong. & Ad.News 2328, 2330. The recovery of damages by the United States was never intended as a major tool in federal enforcement of the antitrust laws. The United States wields primary and substantial enforcement power through other criminal and civil remedies provided by the antitrust laws. On the other hand, actions under 15 U.S.C. § 15 are private enforcement actions wherein the incentive for enforcement created by an award of attorneys' fees is appropriate. In other words, 15 U.S.C. § 15a and 15 U.S.C. § 15 were designed to address different concerns, and Congress' exclusion of attorneys' fees in actions by the United States under § 15a does not reflect Congress' desire to deny attorneys' fees to states suing under 15 U.S.C. § 15. Indeed, we agree with the district court that Congress recognized the distinction between actions by states and those by the United States when it authorized states to bring actions under 15 U.S.C. § 15c(a)(2) as *parens patriae* and to collect reasonable attorneys' fees for doing so. We think it is equally logical to conclude that Congress intended states, like all other private parties, to collect reasonable attorneys' fees for successful antitrust actions brought under Section 4 of the Clayton Act, 15 U.S.C. § 15.

Finally, defendants assert that an award of attorneys' fees to a state represented by its Attorney General is inconsistent with the policy and purposes behind Section 4's provision for recovery of treble damages, plus costs and attorneys' fees. We agree with defendants that the primary purposes of the Section 4 fee award are 1) to encourage private enforcement of the antitrust laws, 2) to insure that the cost of doing so does not diminish the treble damages award, and 3) to deter violations of the antitrust laws by requiring the "payment of that fee by a losing defendant as part of his penalty for having violated the antitrust

laws." *Farmington Dowel Products Co. v. Forster Mfg. Co., Inc.*, 421 F.2d 61, 90 (1st Cir. 1969). Defendants, however, contend that the Attorney General's statutory obligation "[t]o institute and prosecute all actions and proceedings in favor of or for the use of the state," Ill.Rev.Stat. ch. 14, § 4, is sufficient incentive to induce Illinois to bring antitrust actions for damages suffered in its proprietary capacity. Moreover, defendants reason that any possible incentive resulting from recovery of attorneys' fees is remote and speculative because any monies awarded to the Attorney General as attorneys' fees are turned over to the Illinois general fund, and are not retained for the Attorney General's budget.

Defendants' reasoning, however, is once again wide of the mark. First, although the Illinois Attorney General is statutorily charged with the responsibility of prosecuting all actions in favor of Illinois, this statutory responsibility is not self-executing. There is no assurance that the Attorney General will, can, or must prosecute each and every possible legal action that remotely offers the opportunity for relief in favor of Illinois. Political, legal, or financial considerations may be involved in the complex decision whether to bring an antitrust action. Other legal responsibilities and commitments of the Attorney General's staff may all but preclude an aggressive antitrust enforcement program. *See* 967 *Antitrust & Trade Reg. Rep. (BNA)* at D–6 (June 5, 1980) (state antitrust enforcement efforts dwindling in face of federal funds cut-off). Therefore, we think it is apparent that the prospect of recovering the costs of suit and reasonable attorneys' fees will provide some incentive for the Attorney General to enforce the antitrust laws on behalf of Illinois.

Second, although pursuant to Ill.Rev.Stat. ch. 14, § 4, any attorneys' fees awarded to Illinois go to the Illinois general fund and do not go directly to reimburse the Attorney General's office for its expenses, we do not accept defendants' argument that, therefore, the award of attorneys' fees does not act as an incentive for enforcement of the antitrust laws by Illinois. In this age of budget-cutting and cost-consciousness in government, the cost-effectiveness of state antitrust enforcement efforts very likely will be an important factor when funding proposals for the Antitrust Division are considered. As pointed out by the *amici curiae* brief filed on behalf of 43 states, "appropriations for future antitrust enforcement efforts will be based significantly on past effectiveness and past effectiveness is measured in large degree by monetary recoveries, including damages and attorneys fees." We conclude that recovery of reasonable attorneys' fees by Illinois will create greater incentives for state enforcement of the antitrust laws against parties who, by their anticompetitive acts, cause direct injury to the state.

■ Finally, viewing this issue from the defendants' perspective, we see no justifiable reason to distinguish between private parties and states for purposes of awarding successful plaintiffs reasonable attorneys' fees. Defendants bear the burden of paying reasonable attorneys' fees if their anticompetitive acts injure private plaintiffs. We see no policy rationale or congressional intent to lighten defendants' burden when, by chance or by design, their anticompetitive practices injure the state directly in its proprietary capacity. Consequently, we conclude that Illinois, represented by its Attorney General, is entitled to reasonable attorneys' fees under Section 4 of the Clayton Act.

B

The court below held that "plaintiff's attorneys' fees, therefore, are to be assessed with reference to the fee a private practioner [sic] with comparable experience and skill would charge." *Illinois v. Sangamo Construction Co.*, No. 77–3004, slip op. at 6 (C.D.Ill. Aug. 21, 1980). The court accepted the figure of $63,285 for attorneys' fees after reviewing the number of hours expended on this case by each assistant Attorney General and multiplying those hours by

an hourly rate the court found to be acceptable.[5]

Defendants argue that, assuming Illinois is entitled to attorneys' fees, the amount of such fees should be limited to the actual cost to the state of the attorneys involved, i. e., that portion of the attorneys' salaries reasonably devoted to the conduct of this litigation. *See In re Master Key Antitrust Litigation*, 1978–1 Trade Cases ¶ 61,887 at 73,726–27 (allowing compensation to Attorneys General less than that of private counsel, but above average cost to states). According to defendants, if one accepts plaintiff's calculations of the attorney hours involved in this case, and compares these with the annual workload and salaries of the attorneys, Illinois paid just $13,993.90 in salaries for time expended on this case. Although defendants acknowledge that reasonable overhead expenses probably are allowable, they argue that Illinois' failure to introduce any evidence regarding overhead expenses limits Illinois' recovery to the salaries of the attorneys, $13,993.90. Defendants argue that any recovery of fees above the cost to Illinois of conducting the litigation would constitute an unnecessary windfall to Illinois and an additional penalty on defendants, and would not further the purposes of Section 4 of the Clayton Act.

We reject defendants' reasoning and hold that, for an award of reasonable attorneys' fees under Section 4 of the Clayton Act to a state represented by its Attorney General, the use of generally prevailing market rates for attorneys of comparable skill, experience, and reputation is proper. Several considerations lead us to this conclusion. First, in numerous court approved settlements of private antitrust class actions, district courts have awarded fees to state Attorneys General based on generally prevailing market rates. *See, e. g., In re Chicken Antitrust Litigation*, 1980–2 Trade Cases ¶ 63,485 at 76,558 (N.D.Ga.1980); *In re Armored Car Antitrust Litigation*, 472 F.Supp. 1357, 1387 (N.D.Ga.1979); *In re Co-ordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F.Supp. 706, 717 (D.Minn.1975); *Liebman v. J. W. Petersen Coal & Oil Co.*, 63 F.R.D. 684, 694 (N.D.Ill. 1974).

Second, the entitlement to reasonable attorneys' fees is that of the plaintiff, not of his attorney. *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1274 (8th Cir.), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). The amount plaintiff actually pays his attorney is irrelevant, since the determination of what is a "reasonable" fee is to be made without reference to any prior agreement between the parties. *Farmington Dowel Products Co.*, 421 F.2d at 90; *Milwaukee Towne Corp. v. Loew's, Inc.*, 190 F.2d 561, 570 (7th Cir. 1951), *cert. denied*, 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680 (1952). We, therefore, fail to see any reason to distinguish between public counsel and private counsel in determining what is a "reasonable" fee. Furthermore, we think the reasoning of this Circuit's recent decisions awarding successful civil rights plaintiffs attorneys' fees pursuant to 42 U.S.C. § 1988 based on market rates, even though plaintiffs are represented by publicly supported counsel or on a *pro bono* basis, is equally applicable to awards under Section 4 of the Clayton Act. *See Mary v. Ramsden*, 635 F.2d 590, 601–02 (7th Cir. 1980); *Brown v. Stanton*, 617 F.2d 1224, 1233 (7th Cir. 1980).

Third, reliance on generally prevailing market rates for attorneys with comparable skill, experience, and reputation simplifies the already difficult task district courts face in awarding reasonable attorneys' fees. Defendants' approach would require courts to investigate the overhead and incidental expenses incurred by a state in connection with the prosecution of an antitrust suit. Such an inquiry would be a cumbersome means for arriving at a tentative figure of reasonableness. It is far better to rely upon generally prevailing market rates,

---

**5.** The calculations of the district court were as follows:

| | Hours | | Hourly Rate | | |
|---|---|---|---|---|---|
| Assistant Attorney Genera Genovese | 287 | x | $65.00 | = | $ 18,655 |
| Assistant Attorney General DeMay | 396 | x | 55.00 | = | 21,789 |
| Assistant Attorney General Juech | 457 | x | 50.00 | = | 22,850 |
| | | | | | $ 63,285 |

which take into consideration factors such as overhead and support personnel. The initial use of an objective standard of reasonableness, i. e., generally prevailing market rates, is far preferable to extensive judicial scrutiny of private fee arrangements or of the internal economics of the Attorney General's office.

Finally, the use of prevailing market rates does not impose an additional burden on defendants beyond that contemplated by Section 4. Defendants concede that prevailing market rates have been awarded where states have chosen to be represented by private counsel rather than by their Attorneys General. *See, e. g., In re Chicken Antitrust Litigation,* 1980–2 Trade Cases ¶ 63,485 at 76,546; *In re Master Key Antitrust Litigation,* 1978–1 Trade Cases ¶ 61,-887 at 73,728; *In re Gypsum Cases,* 386 F.Supp. 959, 985 n.21 (N.D.Cal.1974), *aff'd,* 565 F.2d 1123 (9th Cir. 1977). From the defendants' perspective, it is fortuitous that Illinois chose to litigate this action through its own Attorney General's office rather than relying on private counsel. There is no additional burden or penalty placed on defendants because Illinois receives reasonable attorneys' fees based on market rates. We commend the State of Illinois for developing a talented antitrust division within its Attorney General's office that is capable of prosecuting complex antitrust cases in a competent and public-minded manner. Indeed, given the extreme reasonableness of the fees requested by Illinois, we suggest defendants should be pleased Illinois did not choose to retain more expensive, private antitrust counsel.

## C

■ We now confront the task of determining whether the $63,285 fee award is reasonable. In doing so, we acknowledge that determination of what constitutes a reasonable attorneys' fee is a matter that must be judged on the facts and circumstances of each case and, consequently, is a matter that rests peculiarly within the sound discretion of the trial judge. *Locklin v. Day-Glo Color Corp.,* 378 F.Supp. 423, 427 (N.D.Ill.1974); *In re Clark Oil & Refining Corp. Antitrust Litigation,* 422 F.Supp. 503, 510 (E.D.Wis.1977). The trial judge is in the best position to assess the skill and competency of counsel, the novelty or difficulty of the case, the benefits of the result achieved, and the reasonableness of the time counsel devoted to the case. *See Ellis v. Flying Tiger Corp.,* 504 F.2d 1004, 1006 (7th Cir. 1972). Consequently, we will disturb the district court's award of attorneys' fees only if we find an abuse of the district court's broad discretion in determining what is reasonable in light of the particular circumstances of this case. *Milwaukee Towne Corp.,* 190 F.2d at 571.

■ In assessing reasonable attorneys' fees, the trial court is to consider the factors set forth in *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1322 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). As we stated there, the court should begin by determining the reasonable hours devoted to the litigation and the reasonable billing rate for that work. The court should then weigh the various factors set forth in *Waters* in determining whether any special circumstances justify an adjustment from "hours spent times billing rate." *Id.*[6]

In the present case, the district court concluded that $63,285 should be awarded to Illinois as reasonable attorneys' fees. We find no abuse of discretion in the district court's methodology or conclusion.

First, the court awarded Illinois compensation for just 1,140 attorney hours. In presenting its fee request, Illinois conscientiously excluded from its request the hours

---

**6.** The *Waters* analysis is very similar to that of the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). The Fifth Circuit recently reexamined and reaffirmed the *Johnson* guidelines in *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581–84 (5th Cir. 1980). The court also noted that "[the *Johnson* test, . . . is similar to the Third Circuit's 'lodestar' method of computing attorneys' fees." *Copper Liquor,* 624 F.2d at 583 n.15, citing *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir. 1973), *after remand,* 540 F.2d 102 (3rd Cir. 1976).

reflecting duplication of efforts by the three assistant Attorneys General involved, approximately 295 hours reflecting travel by attorneys, all hours of the senior supervising attorneys, all hours associated with preparing and litigating the fee request, and all hours of paralegals, law students, and computer personnel.[7] Even though Illinois had the benefit of a prior criminal conviction of defendants for bid-rigging, defendants strenuously litigated the issues of liability and damages. The district court specifically found that the hours requested by Illinois were not excessive. *Illinois v. Sangamo Construction Co.*, No. 77–3004, slip op. at 5 (C.D.Ill. Aug. 21, 1979). Consequently, we cannot conclude that the district court's award of compensation for 1,140 hours reflects an abuse of discretion.

Second, the district court awarded fees of $50, $55, and $65 per hour for the three assistant Attorneys General involved in the litigation. The district court specifically found "that the plaintiff's attorneys conducted both pretrial and trial proceedings in a competent, lawyer-like manner . . . ." *Id.* In addition, the briefs submitted by Illinois to this Court certainly reflect very high-caliber legal work. In light of such findings, the hourly rates utilized by the district court certainly are modest fees for complex litigation. We, therefore, conclude that the rates are reasonable and accurately reflect the quality of plaintiff's counsel.

▪ Multiplying the hours for each attorney by the applicable hourly rate,[8] the court arrived at the figure of $63,285. No adjustment for special circumstances was made, and we find no abuse of discretion in the court's refusal to do so.[9] Consequently, we find that the district court properly weighed the request for fees and the underlying documentation, and that the award of $63,285 is reasonable.

### III

The district court, pursuant to Section 4 of the Clayton Act, awarded Illinois $16,822.36 as costs of suit. The costs included $5,471.91 for deposition expenses, $1,501.47 for copying charges, $9,777.98 for expert witness fees, $56.00 for charts used at trial, and $15.00 for the filing fee. Defendants do not challenge the costs for charts or the filing fee. But, defendants argue that the copying and deposition charges should be reduced significantly and the expert witness fees eliminated completely. We agree in part with defendants.

7. Since Illinois did not request compensation for these miscellaneous legal efforts, we need not decide whether under other circumstances compensation for this work would be appropriate.

8. *See* note 5 *supra.*

9. Defendants argue that any recovery of attorneys' fees in excess of the single damages awarded is improper. Although several opinions suggest that a major factor in assessing attorneys' fees is the relationship between the fees and the damages recovered, *see, e. g., Milwaukee Towne Corp.*, 190 F.2d at 570, the more prevalent and better reasoned analysis rejects any strict limitation as to what constitutes "reasonable attorneys' fees." *See Coop v. City of South Bend*, 635 F.2d 652, 655 (7th Cir. 1980) (within discretion of court to award attorneys' fees in excess of damages); *Copper Liquor*, 624 F.2d at 584 ("a modest damage award should not control an attorneys' fee award") (footnote omitted); *Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 390 (8th Cir.), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974) (not an abuse of discretion to award attorneys' fees in excess of damages); and *Locklin v. Day-Glo Color Corp.*, 378 F.Supp. at 427–28 (where damages are relatively small, it is permissible to award fees in excess of single damages). Thus, an award of attorneys' fees in excess of single damages is permissible, but courts may consider the relationship between attorneys' fees and the damages awarded in determining whether an adjustment to a fee award is appropriate. *See International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1274–75 (8th Cir.), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980) ("While we reject a per se rule . . . that the attorney's fees award should be limited to the amount of the untrebled damages, the high ratio is a factor to consider and requires a close examination of the fee award") (footnotes omitted); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1218 (3rd Cir. 1978), citing *Lindy Bros.*, 487 F.2d at 168. In the present case, we find no abuse of discretion in the district court's award of attorneys' fees in excess of single damages.

First, "[w]ithin the range of items of cost recognized by law, trial courts have broad discretion, especially where factual evaluations are involved." *Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1056 (7th Cir. 1974). Assuming a given expense is an allowable cost item, the district court's determination that the cost was reasonably necessary to the conduct of the litigation and that the amount of the cost is reasonable will not be upset unless there is a clear abuse of discretion. *See Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964); 6 *Moore's Federal Practice*, ¶ 54.70[5] at 1317. Consequently, our review must focus on two issues: 1) are the expenses recoverable "costs"? and 2) are the costs reasonable, both in amount and necessity? Our inquiry is much broader with respect to the first question than the second. Once we have decided whether an expense is a recoverable cost, the trial court is in the best position to determine the reasonableness of the cost. We turn first to the difficult question of whether expert witness fees constitute recoverable costs in private antitrust suits brought under Section 4 of the Clayton Act.

### A

This Court has never squarely addressed the question of whether costs incurred for expert witnesses and consultants are recov-

erable under Section 4 of the Clayton Act. Indeed, our research indicates that this question has received rather summary treatment by most trial and appellate courts. There is general confusion regarding the relationship among the various statutes and court rules authorizing an award of costs. Resolution of this confusion requires integration of the cost provisions of Section 4 of the Clayton Act, Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1920, and 28 U.S.C. § 1821.

Rule 54(d) of the Federal Rules of Civil Procedure grants the district court, in the absence of other statutory authority, discretionary authority to award costs to the prevailing party.[10] But not all expenses incurred by a party in connection with a lawsuit constitute recoverable costs. Indeed, major expenses such as attorneys' fees, investigatory services, and most travel and subsistence expenses generally are not recoverable "costs". *See* 6 *Moore's Federal Practice* ¶ 54.70[1] at 1301–02; *Wahl v. Carrier Mfg. Co., Inc.*, 511 F.2d 209, 216–18 (7th Cir. 1975). Courts are to award, except in limited exceptional situations,[11] only those expenses specifically recognized by statute. *See* 6 *Moore's Federal Practice* ¶ 54.77[1] at 1701–02.

Courts applying Rule 54(d) look first to the general taxation of costs statute, 28 U.S.C. § 1920.[12] *Wahl*, 511 F.2d at 215.

---

10. Fed.R.Civ.P. 54(d) states:

(d) Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . .

11. The Supreme Court, in *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964), recognized that a district court retains limited discretion under Rule 54(d) to award as costs of suit expenses not specifically allowed by statute. The Court, however, stated that all requests for costs should be given "careful scrutiny" and that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." 379 U.S. at 235, 85 S.Ct. at 416.

In *Wahl v. Carrier Mfg. Co., Inc.*, 511 F.2d 209, 215–18 (7th Cir. 1975), this court reiterated the *Farmer* analysis, confirmed that certain expenses not specified by 28 U.S.C. § 1920 may

be allowable costs, and remanded the case to the district court for a proper review of the request for costs.

12. 28 U.S.C. § 1920 states:

Taxation of costs

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special in-

Among the expenses allowable under § 1920 are "[f]ees and disbursements for ... witnesses." The majority of courts interpreting the provision for witness fees in § 1920, including the Seventh Circuit, hold that recovery of fees paid to expert witnesses is limited to the statutory costs specified in 28 U.S.C. § 1821.[13] In *Adams v. Carlson*, 521 F.2d 168, 172 (7th Cir. 1975), this court stated:

The amount which the plaintiffs may recover for witness expenses is determined by 28 U.S.C. § 1821. That section basically provides a statutory allowance for travel and subsistence. Where, as here, the witnesses involved are expert witnesses, the prevailing party can recover only the statutory amounts prescribed in § 1821 and not additional expert witness fees.

*See also Henkel v. Chicago, St. Paul, Minn. & Omaha Ry. Co.*, 284 U.S. 444, 446, 52 S.Ct. 223, 224, 76 L.Ed. 386 (1932) ("Under these provisions [the predecessor of 28 U.S.C. § 1821], additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts."); 6 *Moore's Federal Practice* ¶ 54.77[5.–3] at 1734 n.2 and cases cited therein.

▬ We believe that limiting witness costs to those specified in 28 U.S.C. § 1821 is the correct approach. Congress stated in § 1920 that costs of suit include fees and

disbursements for witnesses. Congress also enacted § 1821, which specifies allowable fees and disbursements for witnesses. In enacting this statutory scheme, Congress made no special provision for a private party's witnesses who are classified as expert witnesses. But Congress did specify that costs include the expense of court-appointed expert witnesses. 28 U.S.C. § 1920(6). We conclude that the congressional silence regarding privately retained expert witnesses means that expenses incurred by private parties to retain expert witnesses are recoverable as costs under § 1920 only to the extent specified in § 1821. We confirm, therefore, that under Rule 54(d) and 28 U.S.C. § 1920 a party may recover as costs of suit for expert witnesses only the amounts specified in 28 U.S.C. § 1821.[14]

The question we must now confront is whether "cost of suit" in Section 4 of the Clayton Act means the same as "costs of suit" in Rule 54(d) and 28 U.S.C. § 1920. Almost every court that has confronted this question has concluded, often without discussion, that recovery of costs under Section 4 of the Clayton Act is limited to those costs recoverable under Rule 54(d) and § 1920. *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 n.75 (2d Cir. 1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *Ott v. Speedwriting Publishing Co.*, 518 F.2d 1143, 1149

terpretation services under section 1928 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

**13.** 28 U.S.C. § 1821 states, in part:

(a)(1) *Except as otherwise provided by law*, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

The remaining portions of § 1821 set forth the fee schedule. Witnesses are entitled to a per diem allowance of $30 for each day's attendance at trial or deposition and for necessary travel time. Witnesses also are entitled to specified travel and subsistence allowances where appropriate.

**14.** Courts retain some discretionary authority to award costs not specifically provided for by statute. *Farmer v. Arabian American Oil Co.*, 379 U.S. at 235, 85 S.Ct. at 416. But, as *Farmer* indicated, such authority should be "sparingly exercised." This discretionary authority is particularly narrow where a party seeks recovery of costs in excess of the amount explicitly provided by statute for that item. It is difficult to reconcile a specific statutory scheme of witness fees and disbursements with discretionary awards of fees in excess of the statutory amounts. Therefore, with respect to witness fees, the only recoverable costs under Rule 54(d), except in exceptional circumstances, are those specified in 28 U.S.C. § 1821. Such exceptional circumstances have not been established in this case.

(6th Cir. 1975); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 81 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 223–24 (9th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964); 6 *Moore's Federal Practice*, ¶ 54.71[3] at 1385; *but see Pitchford Scientific Instruments Corp. v. PEPI, Inc.*, 440 F.Supp. 1175, 1178–79 (W.D.Pa.1977), *aff'd mem.*, 582 F.2d 1275 (3rd Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979) ("cost of suit" interpreted to be more expansive than statutory court costs).

Most of these decisions rely in part upon the analysis of *Straus v. Victor Talking Mach. Co.*, 297 F. 791, 806–07 (2d Cir. 1924), that was rejected by the district court in this case. In *Straus*, a private antitrust action under Section 7 of the Sherman Act and Section 4 of the Clayton Act, the Second Circuit held that the successful plaintiff was not entitled to recover as a cost of suit sums expended for stenographer's minutes of the trial. In doing so, the court examined the significance of "cost of suit" in the Clayton Act as opposed to "costs of suit" in the Sherman Act. The court refused to give any significance to the use of the singular "cost" as opposed to the plural "costs". The court stated that "if it had been intended that 'cost of suit' should mean anything different from 'costs of suit,' that intention would, in some manner, have been made clear." 297 F. at 807. In addition, the court rejected plaintiff's argument that "cost of suit" should refer to all expenses of litigation. The court reasoned that "if, under the Clayton Act, it had been intended to include the expenses 'of suit,' there would hardly seem to be any reason for adding the words 'including a reasonable attorney's fee,' in view of the fact that an attorney's fee would necessarily be a part of the expense incurred in conducting such a litigation." *Id.* Consequently, the court held that since there was no provision for taxing stenographer's expenses for cases at law in the federal courts, the expense was not recoverable under Section 4 of the Clayton Act.

We recognize that the *Straus* holding— that stenographer's expenses are not recoverable costs—is no longer controlling, because now there is an explicit provision in § 1920 for stenographer's expenses. *See Wahl*, 511 F.2d at 217. But, statutory modification of the *Straus* holding does not necessarily repudiate the logic of the underlying analysis. Just as the *Straus* court failed to see any significance between "cost" and "costs" in the antitrust statutes, so do we fail to see any significant difference between "cost of suit" in the Clayton Act and "costs of suit" in Rule 54(d) and 28 U.S.C. § 1920. The facial dissimilarities do not, without some clearer expression of congressional intent, justify an award of costs under Section 4 for items not recoverable under Rule 54(d). Nor have we found any expression of congressional intent behind Section 4 of the Clayton Act that would justify a departure from the accepted practice under Rule 54(d) for what are recoverable expenses.

 It now is well-established that not all litigation expenses are recoverable costs of suit. We will not depart from this rule in order to fully reimburse antitrust litigants when we do not do so for equally deserving litigants who act as private attorneys general under other statutes. Our ruling does not disadvantage antitrust litigants. We merely integrate the rules regarding costs of suit and hold that, in the absence of a contrary congressional pronouncement, where courts are to depart from the traditional American rule that litigants bear their own litigation expenses, the departures shall be uniform. Therefore, we hold that recovery of specific expenses pursuant to Section 4 of the Clayton Act is governed by the recovery of costs under Rule 54(d) and 28 U.S.C. § 1920.

 Since recovery of costs under Section 4 of the Clayton Act is limited to the expenses allowed under Rule 54(d) and 28 U.S.C. § 1920, we hold that the district court erred in awarding Illinois $9,777.98 as costs for expert witness fees. We cannot determine from the record before us what

portion of Illinois' request for expert witness expenses is recoverable under 28 U.S.C. § 1920 and 28 U.S.C. § 1821.[15] We, therefore, remand to the district court for a determination of the amounts permissible under § 1821. *See Adams v. Carlson*, 521 F.2d at 172.

## B

■ The district court awarded Illinois $5,471.91 for deposition charges. This amount included $2,405.36 for witness fees, of which $2,041.36 are expert witness fees, and $3,066.55 are transcript and reporter fees. Because of our decision that expert witness fees in excess of the statutory amount in 28 U.S.C. § 1821 are not recoverable costs, we reverse the district court's award of $2,041.36 for expert witness fees paid in conjunction with depositions taken in this case. We remand to the district court for a determination of the proper amount of witness fees associated with the depositions that are recoverable pursuant to 28 U.S.C. § 1920(3) and 28 U.S.C. § 1821. The remaining $364.00 for witness fees is uncontested and is affirmed.

## C

■ Defendants also contest the district court's allowance of transcript and court reporter fees of $3,066.55. Although defendants acknowledge that fees for court reporters are allowable costs under 28 U.S.C. § 1920(2), defendants claim the district court abused its discretion in awarding such costs in this case. It is well established that "[t]he charges of the court reporter for transcripts of the trial and of depositions reasonably necessary for use in the case even though not used at trial are recoverable upon a proper showing as provided in 28 U.S.C. § 1924." [16] *Wahl*, 511 F.2d at 217; *SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 180 (7th Cir. 1979). Similarly, the expenses of discovery depositions shown to be reasonably necessary to

the case are recoverable even if the depositions are not used as evidence at trial. *Lucky Stores*, 599 F.2d at 180; *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 996 (7th Cir. 1976).

■ The district court applied these standards and concluded that although Illinois did not use every deposition at trial, the depositions were not "frivolous or unnecessary." Slip op. at 7. We will not interfere with the trial court's exercise of its broad discretion unless a clear abuse of discretion is demonstrated. *Fey v. Walston & Co., Inc.*, 493 F.2d at 1056. Defendants have failed to demonstrate that the trial judge, who lived with this case and is infinitely more familiar with the history of this litigation and the utility of the numerous depositions involved than we are, abused his discretion. Consequently, the district court's award of $3,066.55 for transcript and reporter fees is affirmed.

## D

■ The district court also awarded Illinois costs of $1,501.47 for the expense of copying pleadings, correspondence, discovery documents tendered to defendants, documents obtained pursuant to subpoena from Sangamo's accountant, and the transcript of the prior criminal trial. The expense of copying materials reasonably necessary for use in the case are recoverable costs under 28 U.S.C. § 1920(4). The underlying documents need not be introduced at trial in order for the cost of copying them to be recoverable. The district court here determined that the costs were for materials necessary to the trial. We conclude that the district court did not abuse its discretion in awarding Illinois these items as costs.

## IV

For the foregoing reasons, we affirm the award of $63,285 for attorneys' fees, and the award of $1,501.47 for copying expenses, $3,066.55 for transcript and court

---

**15.** We note, however, that the fees paid to an expert who sat at counsel table throughout the trial but did not testify surely are not recoverable costs.

**16.** 28 U.S.C. § 1924 simply provides that a bill of costs be verified.

reporter fees, and $364.00 for witness fees. We reverse and remand the court's award of $9,777.98 for expert witness fees and $2,041.36 for expert witness costs associated with the depositions. The case is

Affirmed In Part And Reversed And Remanded In Part.