**WYNN OIL COMPANY, a corporation, Plaintiff,**

v.

**PUROLATOR CHEMICAL CORPORATION, a corporation, et al., Defendants,**

v.

**Carl E. WYNN and Wesley E. Bellwood, Additional Defendants to the Counterclaim.**

**No. 71–864–Civ–J–S.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 20, 1974.

John F. Corrigan, Corrigan, Werber & Moore, Jacksonville, Fla., for plaintiff.

Chester Bedell, John A. Devault, III, Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, Fla., for defendants.

ORDER DETERMINING AND AWARDING ATTORNEY FEES TO PLAINTIFF PER 15 U.S.C. § 15

BOLDT,* Senior District Judge.

The legal services of plaintiff's counsel evaluated in this decision, for which a reasonable attorney fee is herein awarded to plaintiff Wynn Oil Company, must be strictly limited to the professional services pertaining to the conception, preparation and trial of the two separate and distinctly different Sherman Act claims asserted in Count III, which the jury found established by the evidence and for which the jury awarded compensatory damages of one million dollars for each and a total of two million dollars for both Sherman Act claims.

An award of attorney fees in cases where antitrust violations have been established is mandatory under Section 4 of the Clayton Act amendment to the Sherman Act. Award of an attorney fee pursuant to the Sherman Act is made to the party plaintiff and not to the plaintiff's attorney. However, evaluation of such legal services must be determined upon the same basis and factors that are relevant and applicable to any situation in which an attorney fee is fixed or awarded by a court.

In a case involving only Sherman Act recoveries, determination of the extent and character of legal services performed is comparatively simple. In this case, in addition to Sherman Act claims, plaintiff asserted and recovered upon other claims involving unfair competition in restraint of trade not based on the Sherman Act. This makes determination of the services for which an attorney fee may be awarded somewhat more difficult and evaluation thereof somewhat less precise than if only Sherman Act claims were involved.

In the particular circumstances of this case, it must be emphasized that the attorney fee awarded herein does not nec-

* Sitting by designation.

essarily have any relationship to, or bearing upon, the total amount of fees to which plaintiff's attorneys are entitled for all of their services in this case under their reasonable fee contract with plaintiff.

 Basic principles and particular factors to be considered by the court in awarding attorney fees have been stated and discussed in a number of cases, some quite recent, in various jurisdictions. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); City of Detroit v. Grinnell, 495 F.2d 448 (2nd Cir. 1974); Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp., 487 F.2d 161 (3rd Cir. 1973); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51 (2nd Cir. 1971); Poster Exchange, Inc. v. Nat'l. Screen Service Corp., 431 F.2d 334 (5th Cir. 1970), cert. denied, 401 U.S. 912, 91 S.Ct. 880, 27 L.Ed.2d 811, reh. denied, 401 U.S. 1015, 91 S.Ct. 1250, 28 L.Ed.2d 552 (1971); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 245 F.Supp. 258 (M.D.Pa.1965), vacated on other grounds, 377 F.2d 776 (3rd Cir. 1967), rev'd on other grounds, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968); Stryker & Brown v. Chicago Yellow Cab Co., Inc., 40898 (S.D.N.Y., June 28, 1974); Cook v. Ralston Purina Co., 366 F.Supp. 999 (M.D.Ga.1973); Union Leader Corp. v. Newspapers of New England, 218 F.Supp. 490 (D.Mass. 1963); Applebaum & Sims v. Paramount Pictures, Inc., 1950–51 Trade Cas. ¶ 62,-944 (S.D.Miss.1951). Based on these authorities it appears desirable, if not mandatory, that the court (1) determine the nature and extent of the services in in question, i. e. those performed in securing recovery on the two Sherman Act claims in Count III, (2) evaluate them upon reasonable and comparable hourly rates for similar services in the area where they were performed, and (3) adjust the amount of fee based on hourly rates to include such additional amount, if any, as the court finds reasonable upon full consideration of each of the relevant factors for which compensation above that based solely on hourly rates may properly be awarded. Most of these relevant factors are referred to in a very recent 5th Circuit Court of Appeals decision, Johnson v. Georgia Highway Express, *supra*, and all of the factors are referred to in one or more of the cases cited above. Each factor and its relevance and significance in this case is briefly stated below:

1. *Prior government investigation, indictment or criminal prosecution:* None, in this case, nor assistance from any other "windfall" source in discovery or other preparation and presentation of plaintiff's case.

2. *Related civil actions:* None in this case.

3. *Issues novel, complex or simple, well established:* Although not wholly unprecedented, plaintiff's claims for recovery based on a variety of unfair competition activities by defendants in restraint of trade and for damages in a total award proximately caused by the combined and concurring effect of all defendants' tortious conduct, are infrequently litigated and require a high degree of skill and ingenuity for effective presentation in trial.

 Defendants' principal defense of self-inflicted injury by plaintiff was both novel and complex. It was presented and opposed with great vigor and skill on both sides.

4. *Likelihood of success or failure:* From the beginning of the misconduct complained of until the verdict was rendered there was no assurance or certainty whatever as to the outcome of the trial.

5. *Quality of Legal Services:* In the opinion of the court, the performance of counsel in conferences, motion arguments, briefs

and all other aspects of pretrial and trial work clearly indicates the excellent quality of services rendered by both plaintiff's and defendants' counsel.

6. *Preclusion of other employment:* Exhaustive nationwide discovery, a great many depositions, and extensive travel to various parts of the country for production of documents and other pretrial preparation, primarily by Mr. Corrigan, must have precluded plaintiff's counsel from doing most, if not all, legal work otherwise available to their firm during the many months of pretrial preparation. Certainly, neither Mr. Moore nor Mr. Corrigan could possibly have attended to any other business during final pretrial preparation and the six weeks of trial.

7. *Experience and reputation of counsel:* Counsel for plaintiff have had extensive trial experience in antitrust, restraint of trade and similar litigation, and their reputation is excellent for ability and integrity in their community and region. The experience and reputation of counsel for defendants is also of the highest quality.

8. *Fixed or contingent fee:* Neither. By agreement with their client plaintiff's attorneys are entitled to a reasonable fee with emphasis on the results obtained to date and ultimately.

9. *Time limitations and urgency of the litigation:* The sudden near total take over by defendants of plaintiff's product distribution system made action by plaintiff imperative, extremely urgent and required virtually full time attention from plaintiff's counsel.

10. *Amounts involved:* $2,000,000.00.

11. *Nature and length of relationship with clients:* No previous association. Wynn Oil Company headquarters is in California and the firm has a General Counsel and a staff which minimizes the likelihood of more than occasional association in the future.

12. *Awards in similar cases:* Trial lawyers qualified and experienced in antitrust and complex litigation are in a branch of legal practice recognized by all judges handling such cases to involve special, highly developed skills by attorneys and deserve substantial compensation above hourly rates, whether fixed by the court or by contract with clients.

13. *Undesirability of case:* This factor is relevant principally in civil rights cases and others involving interests of general public importance having little, if any, direct pecuniary value, and has not been given consideration in this case.

14. *Risk of litigation:* This factor has been important principally in determining fees in settled litigation and has not been considered in this case.

As appears from the record, the basic theory and thrust of plaintiff's claims in Counts III, IV, V and VII, and the basis upon which plaintiff sought the damages which the jury awarded, was evidence showing that defendants employed against plaintiff a variety of methods and means of unfair competition in restraint of trade. Thus, it is clear that the services rendered in developing this theory, which included conducting extensive nationwide discovery, enabled plaintiff's counsel to produce a great many witnesses, widely scattered in residence, whose testimony in person or by deposition was admitted in evidence. Extensive and painstaking discovery also produced a great many critically important documents admitted in evidence. In presenting plaintiff's evidence and in argument to the jury, both Mr. Corrigan and Mr. Moore performed with exceptional professional skill, ingenuity and effectiveness. The major features of all

the services referred to were directly applicable to and essential in successful presentation of the two Count III claims upon which plaintiff recovered. To a greater or lesser extent, the same services were also applicable to presentation of the unfair competition activities of defendants upon which plaintiff recovered under Counts IV, V and VII. To put it simply: if the plaintiff had only asserted Sherman Act violations in this case, a large part of all the legal services of plaintiff's counsel would have been required regardless of the other unfair competition activities of defendants. Thus, plaintiff should be compensated for the major portion of the time, effort and legal skill its counsel necessarily applied to the Sherman Act claims, a part of which was also applicable to the unfair competition claims not based on the Sherman Act.

In the opinion of this court the legal services performed for plaintiff were of high quality both in trial preparation and trial. Those services involved ingenuity and resourcefulness in dealing with a novel defense of self-inflicted injury asserted by defendants, in developing and effectively pursuing a valid but infrequently litigated theory of recovery based on a variety of unfair competition activities in restraint of trade, and in claiming and proving to the satisfaction of the jury a total of alleged damages proximately caused by the combined and concurring tortious misconduct the jury found chargeable to the defendants. These services required special research and discovery of evidence, as well as great skill in presentation of plaintiff's contentions and evidence in the trial.

Plaintiff has submitted affidavits as to the attorneys fees by three highly reputable and distinguished attorneys with extensive experience in the same or similar type of litigation. In general, they indicate that very substantial attorney's fees are awarded to successful plaintiffs who establish Sherman Act violations. The opinions of those experts might be considered by plaintiff and its

attorneys in calculating the total fees to be paid for services performed by plaintiff's counsel in this litigation. However, the opinions of these lawyers are not directed specifically to plaintiff's recovery under the two claims of Count III, which is the only recovery for which plaintiff is entitled to an award of attorney's fees. For these reasons, the affidavits referred to have been totally disregarded by the court.

According to plaintiff's final memorandum on attorneys fee and a supporting affidavit of Mr. Corrigan, substantial additional time was spent on this case that was not recorded in office records of the Corrigan firm. The total number of recorded hours plaintiff's attorneys spent on this case to June 12, 1974 is 6,793.80 hours, of which Mr. Corrigan estimates 80% was expended, in whole or in part, on the federal antitrust claims. Further breaking down this 80%, he estimates 60% of the total hours expended was directly related to the federal antitrust claims and 20% of the total was work of a dual nature spent on both the antitrust and non-antitrust claims. 4,513.50 hours of the total were performed by lawyers with more than five years experience and 2,280.30 hours were performed by lawyers with less than five years experience, that being the basis of billing the client. Plaintiff's counsel have also broken down the hours of their services in this case by the nature of the work accomplished and by identifying the individual attorneys performing the services. A copy of this data is hereto attached as an appendix to this decision.

Defendants' counsel requested and were permitted inspection of all of the Corrigan firm's time records, interim billings on account to the client and every other record directly or indirectly relating to the amount and character of professional services by the firm in this case. In defendants' final memorandum on attorney fees, defendants assert that Mr. Corrigan's estimate of the amount

and character of the professional work upon which the award to plaintiff should be made is inadequately recorded and insufficiently characterized. After having fully reviewed all of the materials submitted on attorney fees by both plaintiff and defendants, the court is satisfied the defendants' contentions referred to are without substantial or significant merit, as least insofar as determination of fees in this particular case is concerned.

In an affidavit attached to the final memorandum of defendants' counsel dated 7/17/74, Mr. McInerney states in substance that defendants' counsel have made a calculation of a "maximum fee" to be awarded plaintiff, on assumption but not admission, of the accuracy of Mr. Corrigan's estimate that 80% of the total hours expended by plaintiff's counsel on all phases of the case were necessarily expended in the successful pursuit of the antitrust claims. To the total hours spent in presenting the antitrust claims (presumably calculated by Mr. McInerney but not so stated in his affidavit) defendants' counsel applied hourly rates of $75.00 for the lawyers with more than five years experience and $50.00 per hour for lawyers of less than five years experience, those being the amounts billed to the client. The resulting figure, including the total fee of consulting counsel, Weil, Gotshal & Manges of New York City, is the sum of $338,602.00, which Mr. McInerney says is "generous" and should be "a maximum reasonable attorney's fee" to be awarded plaintiff in this case "under any standard and without regard to plaintiff's fee arrangement with its attorneys."

The claim of generosity by defendants' counsel, in their computation of fair and reasonable compensation to the plaintiff for the services rendered by the counsel defendants so vigorously and meticulously opposed at every step of the proceedings in this case from beginning to the present, is of questionable validity considering the fact that in their computation, without justification, they totally ignore all of the factors applicable to this case pertaining to the quality, resourcefulness and effectiveness of legal advocacy that the court should consider in determining whether to add a reasonable amount therefor to hourly rate compensation in fixing the total fee to be awarded plaintiff.

Almost all of the above stated factors and the necessity of considering them are stated and discussed by the Fifth Circuit Court of Appeals in Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714 decided 1/21/74. The failure of defendants' counsel to even mention any of these factors, obviously intangible but of great significance in computing attorney fees, raises doubt in the mind of this court whether it was necessary or reasonable for defendants to have gone to such great lengths of time, effort and expense to plaintiff and defendants in challenging Mr. Corrigan's estimates when exact computation of hours spent on successful antitrust claims was not possible, and in view of defendants' other extraordinary efforts to minimize the fee due plaintiff in this case.

However, assuming without checking accuracy of computation, the court hereby adopts as reasonable Mr. McInerney's sum of $338,602.00 solely as a total of recorded hourly rate compensation, to which the court finds should be added a reasonable amount for time expended but not recorded, time expended since the date of plaintiff's computation and for necessary expenses incurred and paid but not previously taxed. The total amount of these items the court finds to be in the sum of $40,000.00, which results in a total of hourly rate compensation hereby found and determined by the court in the sum of $378,602.00.

The above stated factors found applicable to this case, each briefly discussed above, have been given full and extended consideration. It is clear beyond reasonable contradiction, and none has been offered, that all of the factors found applicable above support an award above

hourly rate compensation. Those relating to the nature of the issues, the character and extent of opposition encountered, the exceptional experience and trial skill of counsel on both sides, the effective presentation of plaintiff's case, the amounts involved and those recovered for plaintiff, under the Sherman Act alone and without regard to the other applicable factors, in the opinion of this court justify substantial compensation above that based on hourly rates. The amount of such additional compensation necessarily is a matter for fact finding and estimate by the court, based on several weeks of first hand observation of the applicability of the particular factors referred to above in this paragraph, and extensive experience in similar litigation and in the fixing of attorney fees in various areas of this country over a period of more than twenty years.

On that basis, this court is satisfied that non-hourly rate compensation in this case, at a minimum, should be approximately half of that based on hourly rates. Accordingly, it is hereby found and held that the sum of $175,000.00, should be added to hourly rate compensation for a total attorney fee of $553,602.00 hereby awarded to plaintiff, Wynn Oil Co. Incidentally, this amount is almost exactly 27½% of the compensatory damages awarded to plaintiff by the jury on the two Count III Sherman Act claims. Upon the above stated findings,

It is hereby so ordered.

The Clerk is hereby directed to promptly enter the above stated total amount of attorney fee in the space provided therefor in the final judgment previously entered in this case on July 12, 1974.

## APPENDIX

### PROFESSIONAL SERVICES RENDERED
### WYNN OIL CO. v. PUROLATOR CHEMICAL CORP.
### No. 71–864–Civ–J–S

*Services Rendered To and Including June 12, 1974.*

A. Attendance at trial and trial preparation during trial period:

| | |
|---|---:|
| John F. Corrigan | 636.75 |
| J. Richard Moore | 515.75 |

B. Trial preparation after February 28th pretrial:

| | |
|---|---:|
| John F. Corrigan | 275.00 |
| J. Richard Moore | 242.00 |

C. Trial preparation prior to February 28th pretrial:

| | |
|---|---:|
| John F. Corrigan | 296.00 |
| J. Richard Moore | 85.00 |

D. Post-trial matters, including briefing and hearing on defendants' motions:

| | |
|---|---:|
| John F. Corrigan | 244.50 |
| J. Richard Moore | 109.00 |

E. Taking depositions out of town:

| | |
|---|---:|
| John F. Corrigan | 340.00 |
| J. Richard Moore | 20.00 |

F. Taking depositions in Jacksonville:

| | |
|---|---:|
| John F. Corrigan | 160.00 |
| J. Richard Moore | 7.00 |

G. Discovery and fact investigation other than depositions out of town:

| | |
|---|---:|
| John F. Corrigan | 537.70 |
| J. Richard Moore | 15.00 |

H. Discovery and fact investigation other than depositions in Jacksonville:

| | |
|---|---:|
| John F. Corrigan | 587.70 |

I. Legal research and briefing:

| | |
|---|---:|
| John F. Corrigan | 218.85 |
| J. Richard Moore | 44.50 |
| Irving Scher | 59.50 |
| John F. Carney | 105.50 |

J. Other:

| | |
|---|---:|
| Olin E. Watts | 11.00 |
| Edwin M. Clarke | .75 |
| W. A. Hamilton | 1.50 |
| W. A. Hamilton, III | .50 |
| Total hours recorded by attorneys with more than five years experience | 4,513.50 |

G. Discovery and fact investigation other than depositions out of town:

| | |
|---|---:|
| Edward C. Coker, III | 380.00 |
| Halcyon Skinner | 48.00 |

H. Discovery and fact investigation other than depositions in Jacksonville:

| | |
|---|---:|
| Carl M. Stewart | 150.50 |
| Edward C. Coker, III | 600.50 |
| Halcyon Skinner | 290.00 |

I. Legal research and briefing:

| | |
|---|---:|
| Carl M. Stewart | 64.50 |
| Allen Weinschell | 12.50 |
| Bruce Rich | 112.80 |
| F. R. Brock | 4.75 |
| Edward C. Coker, III | 160.00 |
| Halcyon Skinner | 145.25 |
| Roy G. Harrell | 311.50 |

| | |
|---|---:|
| Total hours recorded by attorneys with less than five years experience | 2,280.30 |

*Services Rendered from June 13, 1974 to July 15, 1974*

| | |
|---|---:|
| John F. Corrigan | 59.00 |
| J. Richard Moore | 9.00 |
| Carl M. Stewart | 5.00 |
| Total hours recorded by attorneys for services from 6/13/74 to 7/15/74 | 73.00 |