**EXHIBITORS' SERVICE, INC.,**
Plaintiff,

v.

**AMERICAN MULTI–CINEMA, INC., American Multi-Cinema Management, Inc., American Multi-Cinema Film Marketing, Inc., American Multi-Cinema Exhibition, Inc., Durwood, Inc., Defendants.**

No. CV 81–3700–ER.

United States District Court,
C.D. California.

Feb. 28, 1984.

Maxwell Blecher, Blecher, Collins & Weinstein, Los Angeles, Cal., for plaintiff.

Barger & Wolen, Los Angeles, Cal., Robert C. Hackett, William C. Blakley, Mohr, Hackett, Pederson & Blakley, Phoenix, Ariz., for defendants.

## MEMORANDUM OPINION AND ORDER

RAFEEDIE, District Judge.

This is an action for damages and injunctive relief under federal antitrust laws and state tort law brought by plaintiff Exhibitors' Service, Inc. ("ESI"), against defendants American Multi-Cinema, Inc. and its related entities ("AMC") and Durwood, Inc. On September 26, 1983, the Court directed a verdict in favor of Durwood, AMC Film Exhibition, and AMC Management. At the conclusion of the evidence, the Court directed a verdict in favor of AMC on ESI's state tort claims that AMC tortiously interfered with contractual relations or prospective advantage. The jury returned a verdict in favor of ESI on the one remaining Sherman Act, § 1 claim in the amount of $70,408.00 (before trebling). ESI now comes before the Court seeking $214,431.25 in attorney's fees and $21,941.79 for expert fees. For the reasons set forth below, the Court finds the plaintiff is entitled to a reasonable fee award of $105,612.00 and $7,160.83 in costs.

### I

Section 4 of the Clayton Act, 15 U.S.C. § 15, permits the successful plaintiff in a private antitrust action to recover reasonable attorney's fees as part of his costs of suit:

"[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides ... and shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fee."

The purpose of the attorney's fee provision is to insulate treble damage recovery from expenditures for legal fees, consonant with § 4's general purpose of encouraging private individuals to undertake enforcement of the antitrust laws. *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1312 (9th Cir.), *cert. denied*, 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *Perkins v. Standard Oil Co.*, 474 F.2d 549, 553 (9th Cir.1973). A reasonable award of attorney's fees is a mandatory part of the successful § 4 claimant's recovery. *Twin City Sportservice*, 676 F.2d 1291.

The Ninth Circuit has sanctioned the use of a "blend" of two overlapping analyses—the *Lindy* approach and the *Kerr* approach—to determine "reasonable" fees under the Clayton Act. *Moore v. James H. Mathews & Co.*, 682 F.2d 830, 830–41 (9th Cir.1982). Under this blend of analyses, the Court first must determine for each of plaintiff's attorneys a "lodestar" figure, based on the number of hours legitimately expended and adequately documented by counsel in preparation for the suit, multiplied by a reasonable hourly billing rate. *See Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167–69 (3d Cir.1973), *following remand*, 540 F.2d 102, 112–18 (1976). Next, the Court must consider enhancing or decreasing the lodestar figure in light of the particular case. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) (adopting twelve factors set forth in *Johnson v. Georgia Statistics Express, Inc.*, 488 F.2d 714 (5th Cir.1974)).

Factors to consider at the second level of analysis include (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employ-

ment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

## II

Before analyzing the motion for attorneys' fees in this traditional manner, however, this Court must address AMC's argument that the contingent fee contract between ESI and its counsel prevents this Court from awarding more than $105,612.00 in attorneys' fees.

Plaintiff's fee agreement with its counsel provides as follows:

2. The attorneys' compensation will be one-third of the total amount recovered by trial or by settlement, which amount shall include any attorneys' fees ordered to be paid by defendants under § 4 of the Clayton Act in the event plaintiff prevails at trial.

This provision means that the attorneys' portion is computed by adding the trebled judgment and the Court's award of attorneys' fees and then dividing the total amount by three. If the Court would award the entire amount requested, the arithmetic would be as follows:

$211,224 (trebled judgment) plus $214,431.25 (attorney's fees) = $425,655.25. Two-thirds of this is $283,770.17 (ESI's), one-third of this is $141,885.08 (attorneys').

AMC complains that if this Court awards any amount more than $105,612.00 in attorneys' fees, the Court will be awarding plaintiff more than plaintiff is legally required to pay its lawyers. This, AMC contends, violates California Business and Professions' Code § 6076, Rule 3–102 which prohibits a member of the California Bar from directly or indirectly sharing legal fees and results in ESI recovering more money than that to which the jury verdicts entitles it.

Courts have taken into consideration the plaintiff's fee arrangement in determining fee awards when a party has directed the court's attention to the arrangement. *See, e.g., Farmington Dowel Products, Co. v. Forster Manufacturing Co.*, 436 F.2d 699 (1st Cir.1970); *Computer Statistics, Inc., v. Blair*, 418 F.Supp. 1339 (S.D.Tex.1976). Generally, when courts examine the fee arrangement, the courts have been concerned that an attorney would receive too high a fee—unreasonable in an ethical sense. (*Farmington Dowel Products, Co. v. Forster Manufacturing Co.*, for example, dealt with a fee arrangement in which the attorney was to receive both one-third of the trebled jury verdict and all of the attorney's fee.) Plaintiff admits that courts have considered the fee arrangements in such situations, but wants to limit court consideration of fee arrangement to the danger of unethical fees to attorneys. ESI, however, gives no rationale for so limiting consideration of fee arrangements and at least one court has considered the fee arrangement so as to avoid an attorney fee award that would result in the plaintiff receiving too much. *See Computer Statistics*, 418 F.Supp. 1339.

■ Plaintiff argues that the attorney's fee award belongs to the successful antitrust plaintiff, and if plaintiff passes on some of this money to its lawyer, this is only the plaintiff's concern. While this is a correct statement of law, *see e.g., Farmington Dowel*, 421 F.2d 61 at 88 (1st Cir. 1969), this does not determine the separate question whether it is "reasonable" for a court to award in attorneys' fees more than the plaintiff is contractually obligated to pay its attorneys.

■ The Ninth Circuit has not addressed the question whether the amount that plaintiff is contractually obligated to pay its attorneys serves as a cap as to what constitutes a reasonable attorney's fee under § 4. Such a limitation does, however, comport with the purpose that the Ninth

Circuit ascribes to the award: It insulates the treble damages, preventing the jury verdict from being depleted by payment of attorney's fees. By insulating the award in this way, the attorney's fees encourages plaintiffs to bring private suits.[1]

Section 4 of the Clayton Act, 15 USC 15, allows a successful treble damage plaintiff to recover reasonable attorney's fees as costs. An award of attorney's fees as part of the cost of a successful antitrust suit is mandatory ... and the purpose of the attorney's fees provision is to insulate treble damage recovery from expenditures for legal fees, consistent with § 4's purpose to encourage private persons to undertake enforcement of antitrust laws.

*Twin Sportservice v. Charles O. Finley & Co.,* 676 F.2d 1291, 1292, 1312 (9th Cir. 1982).

Defendants cite two cases that address the propriety of limiting attorney's fees to the amount that plaintiffs are obligated to pay their attorneys. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974),[2] introduced the twelve factors mentioned above that are used to determine attorney's fee awards. These twelve factors were adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 67–70 (9th Cir.1975). The sixth factor listed by *Johnson* is:

(6) *Whether the fee is fixed or contingent.* The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. But as pointed out in *Clark v. American Marine* [320 F.Supp. 709 (1970) ], *supra,*

[t]he statute does not prescribe the payment of fees to the lawyers. It allows the award to be made to the prevailing party. Whether or not he agreed to pay a fee and in what amount is not decisive. Conceivably, a litigant might agree to pay his counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court. Or he might agree to pay his lawyer a percentage contingent fee that would be greater than the fee the court might ultimately set. Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agreed but what is reasonable.

320 F.Supp. at 711. *In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount.*

*Johnson,* 488 F.2d at 718 (emphasis added.)

The second case supporting limitation of the attorney award to no more than the plaintiff is obligated to pay its attorneys is *Computer Statistics, Inc. v. Blair,* 418 F.Supp. 1339 (S.D.Tex.1976).[3] This district court first determined the attorney's fee award on the basis of hours worked and fee charged. Citing *Johnson,* it refused to add a multiplier to this amount because the plaintiff was contractually bound to pay its attorneys on an hourly basis. The court said:

Increasing the fee award beyond an hourly rate is designed to consider subjective criteria such as the nature of the legal issues and the effectiveness of counsel. However, the basic question is still one of reasonableness. Unlike antitrust actions, plaintiff's attorneys here had a fixed fee arrangement with CSI. While consideration of the subjective criteria is essential to a determination of

---

1. While plaintiffs might be even more encouraged to bring antitrust lawsuits if the courts were very generous with their awards of attorney's fees, § 4 states that the attorney's fees must be reasonable.

2. As plaintiff's attorney correctly noted at oral argument, *Johnson* is not an antitrust attorney's fees case. This, however, is a distinction without a difference as *Johnson's* analysis has been adopted by the Ninth Circuit as the appropriate analysis to use in determining attorney's fees under § 4.

3. Plaintiff's attorney was wrong when he told the Court at oral argument that *Computer Statistics* was not relevant because it is not an antitrust attorney's fee case.

the reasonableness of the fee award, it is clear that "[i]n no event ... should the litigant be awarded a fee greater than he is contractually bound to pay." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974). *Consequently, when presented with the type of fee arrangement here, there is an upper limit to an award of attorneys' fees—an upper limit to what would be reasonable. The policy behind such a limit is equally lucid: the award of attorneys' fees is compensatory and it would be per se unreasonable to have the client receive in attorneys' fees more than he has paid.*

The authorities cited by plaintiff in support of the use of a multiplier are not inconsistent with this court's approach. In *Wynn Oil Co. v. Purolator Chemical Corp.*, 391 F.Supp. 522 (M.D.Fla.1974), for example, as with most such cases, there was no fixed amount the plaintiff was bound to pay. Instead "by agreement with their client plaintiff's attorneys [were] entitled to a reasonable fee."

In the case now before the court, the fee CSI is contractually bound to pay was computed on an hourly basis and, with the above-described, necessary adjustments, amounts to $146,092.50. In light of *Johnson, supra*, any amount in excess of this would not be reasonable within the meaning of 15 U.S.C. § 15. *Computer Statistics*, 418 F.Supp. at 1351 (emphasis added). Because the district court had already subtracted for time spent that was not compensable, the attorneys in this case were awarded less than their full amount.

The only case this Court could find that opposed limiting the attorney fee award to the amount contractually specified is *State of Illinois v. Sangamo Construction Co.*, 657 F.2d 855 (7th Cir.1981). There, the State of Illinois sought attorney's fees for its attorney general and assistant attorney general who had successfully prosecuted an antitrust case. The court rejected the argument that the fee award should be limited to that portion of the officials' salaries that went to the prosecution of the

antitrust claims. The court instead awarded a fee based on hours spent multiplied by an hourly fee between $50.00 and $65.00. In reaching the decision, the court relied on the following factors:

1. that district courts in the past had not limited a state's attorney's fees to a percentage of the official's salary;

2. that the entitlement to reasonable attorney fees is that of the plaintiff, not the attorney, and the determination of reasonableness is made without reference to the agreement between the parties;

3. that pro bono plaintiffs are awarded attorney fees, even though such plaintiffs have no obligation to pay their lawyers any money;

4. that relying on market rates simplifies the calculation and eliminates the need to calculate overhead;

5. that the defendant was not prejudiced because the state could have hired private attorneys rather than state employees and, if it had, the defendant would have had to pay at least the amount the court awarded.

*Id.* at 861–62.

Factors 2, 3, and 5 are arguably applicable in this case, but do not persuade this Court that a contract between private parties limiting the attorney's compensation for representing a client in an antitrust action should not be controlling in this Court's determination of a reasonable attorneys' fee. The Seventh Circuit in *Sangamo* did not consider the rule set forth in *Johnson* that a reasonable fee could not be more than the plaintiff was contractually obligated to pay, perhaps because *Sangamo* dealt with state officials on a yearly contract, rather than private attorneys, hired to litigate one case. The fact that pro bono plaintiffs are awarded attorney fees has no bearing on this case, nor would this decision have any bearing on the fees awarded in such cases. Finally, the reasonableness of attorney's fees cannot be determined on the basis of how much of a burden it is to defendant. If this were a

factor, courts would be required to examine financial statements of defendants as well as time sheets by plaintiffs in determining attorney's fees.

Limiting the attorney fee to $105,612 in this case would be neither unfair nor unjust to the plaintiff or plaintiff's attorneys. It merely forces the attorneys to accept the consequences of their gamble and precludes the plaintiff from receiving a windfall that nearly equals its untrebled jury verdict. If the trebled verdict had been more than $400,000, the jury verdict would have subsidized the attorneys. If the Court were to give the full amount requested, the attorney's award would subsidize the plaintiff.[4] But while the size of the attorney's fee requested in relation to the verdict awarded is a factor to consider in determining the size of the attorney's fee, *see Johnson*, 488 F.2d at 718, the correct method to ameliorate this concern is not to subsidize the plaintiff through the attorney's fee, but rather to reduce the amount of the attorney's fee, *see Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263 (N.D.Cal.1979). For the Court to do as plaintiff requests comes dangerously close to fee-splitting, which is forbidden by California statute.[5]

Therefore, this Court finds that a reasonable attorneys' fee in this case is $105,612 and orders that the defendants pay such amount.

## III

In the event that an appellate court should disagree with this order, the Court now provides an analysis of plaintiff's fee request based upon the methodology set forth at pages 2 and 3. Utilizing this approach, the Court would award the plaintiff $126,561.00.

In determining the attorney's fee award under this traditional approach, the first step is to calculate the correct number of hours for which the attorneys can be compensated. AMC objects to the following claims by ESI: time spent on motions for summary judgment under the per se rule; time spent preparing and defending damage studies that were not admitted in evidence; time spent on the claims against Durwood and the two AMC subsidiaries that were dismissed and the state tort claims that were dismissed; and time for familiarization of the new associate when counsel changed in the third year. AMC also objects to the hours for the two paralegals who sat in at trial, handing exhibits to the two attorneys who were also always present at trial.

■ The rule as set by the Ninth Circuit is that "a prevailing antitrust plaintiff is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of anti-trust damages." *Twin City Sportservice*, 676 F.2d at 1313. Under this rule, ESI is entitled to compensation for time spent on the damage study and for the motions that the per se rule applied to this case, as both would be undertaken by a reasonable attorney in pursuit of the antitrust recovery.

■ ESI is not, however, entitled to recover from defendants for time spent on claims against other defendants who were dismissed. First, this time was not incidental to the recovery of antitrust damages because no damages were recovered against such defendants. Second, it would

---

**4.** If the Court were to award the full amount requested by the plaintiff, plaintiff would receive $67,000 more in attorney's fees than it is obligated to pay its attorneys. Its untrebled jury verdict was only $70,000. The difference between the amount the attorneys would be entitled to receive from plaintiffs should this Court award the full $214,431 requested rather than the $105,612 would be only $37,000. The rest would go to the plaintiff.

**5.** California Business and Professions Code, § 6076, rule 3, states in pertinent part that "A member of the State Bar shall not ..., except with a person licensed to practice law, ... directly or indirectly share compensation arising out of or incidental to professional employment."

not be fair to defendants to make them pay attorney's fees for claims against other defendants. *See Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3rd Cir.1978) (particular defendant only liable for those hours devoted to prosecuting claim against it); *see also Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir.1982) (remanding to district court question of whether plaintiff entitled to reimbursement for time spent on defendants who were dismissed).

■ Similarly, ESI is not entitled to time spent on the state tort claims for interference with contractual relations or prospective advantage. While the facts underlying these claims may be very similar to the facts underlying the antitrust claims, time spent only on state claims was not in pursuit of antitrust damages, but rather of *state tort damages*, an independent legal claim. As such, the time is not recoverable under § 4.

■ Duplicative work is also not recoverable. *Twin City Sportservice*, 676 F.2d at 1313. Therefore, time spent by the associate Carlo when she replaced the associate Davis in 1983, after Davis had worked on the case for two years, is not recoverable. Additionally, this Court sees no reason that ESI needed two attorneys and two paralegals in the court for the entire trial; thus, the paralegals' trial times should also be subtracted.

Although the Court is able to state what type of work cannot be compensated, it is difficult to say with any precision how many hours are thus affected. The time sheets submitted by plaintiff's attorneys do not state the number of hours spent on specific tasks, nor do they describe such tasks in a manner that would be helpful in eliminating hours spent on claims against dismissed defendants, state tort claims, or familiarization of the new counsel. (The number of hours paralegals spent in court

is not difficult to calculate, although again plaintiff's documentation does not provide such information.) Nor did plaintiff give any estimate in its reply papers, even though it knew that defendants had questioned the inclusion of such hours.[6]

■ The Court is thus forced to estimate the number of hours plaintiff's attorneys spent on the various tasks which must be subtracted. Such estimate is necessarily liberal in order to prevent plaintiff from reaping a windfall by reason of its counsel's omission. Plaintiff, of course, bears the burden of proving its entitlement to fees, and the uncertainty arising from counsels' inadequate time records has been resolved against ESI. *See Spray-Rite Service Corp. v. Monsanto Co.*, 684 F.2d 1226 (7th Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983).

The Court deducts 90 hours from each paralegal's hours to eliminate the time spent sitting in trial, 10% of Carlo's hours to eliminate time spent in 1983 duplicating the hundreds of hours Davis spent in the two previous years; and a further 10% from all hours to eliminate the time spent on the claims against the dismissed defendants and the state tort claims. This results in the following hours for the attorneys and paralegals:

| | |
|---|---|
| Bleecher | 273 |
| Carlo | 650 |
| Davis | 410 |
| Davidson | 28.6 |
| Sidio | 13 |

The hourly rate for Bleecher is $200. Although that is substantial, Mr. Bleecher's forensic skill and standing at the bar warrants such a charge. Carlo's rate at $125 is acceptable, but somewhat high given her experience. Plaintiff's attorneys submitted a copy of a bill to another client in which her time was billed at $125 an hour, and the rate also conforms to the

---

**6.** Indeed, the plaintiff's attitude, or at least the attitude of its attorneys, is that questions about the correct number of hours are trifling, and "[e]quity does not deal with trifles." Plaintiff's Reply Memorandum in Support of Application for Attorneys' Fees and Expert Fee at 6. This Court, however, feels it is its duty to ascertain the correct number of hours that constitutes a "reasonable attorney's fee" under § 4.

figures written on the time sheets submitted to the Court. Davis' rate is given as $100, and that is too high. The work was done in 1982 and 1981, when Davis was less experienced than he is now. More importantly, the figures on the time sheets submitted to this court indicate that his time was being billed out to other clients at $50, $65, $75, and $85 an hour, with $50 an hour being the most common figure. Given this fact, the Court determines that $75 an hour is an appropriate fee.

The following rate and figures are produced:

| | Hours | Rate | Fee |
|---|---|---|---|
| Bleecher | 273 | $200 | $54,600 |
| Carlo | 650 | 125 | 81,255 |
| Davis | 410 | 75 | 30,750 |
| Davidson | 29.6 | 35 | 1,015 |
| Sidio | 13 | 35 | 455 |
| TOTAL | | | $168,075 |

■ To this total of $168,748, the *Kerr* factors must be applied to see if any reduction or increase is required. Most of these factors have already been considered in determining the appropriate number of hours and hourly fee or are irrelevant, e.g., the nature of the professional relationship with the client. The results obtained, however, do require a downward reduction. Plaintiff's jury verdict was, as noted previously, only $70,000, even though the complaint sought $350,000 in actual damages as well as punitive damages. The attorney asked for $225,000 in damages in his closing argument. The Court, therefore, is reducing the amount another 25%. *See In re Capital Underwriters, Inc.*, 519 F.Supp. 92, 102 n. 11 (N.D.Cal.1981) (applying inverse multiplyer for low benefit produced) *vacated and remanded on other grounds*, 705 F.2d 466 (9th Cir.1983); *Knutson*, 479 F.Supp. 1263 (reducing award 25% because only nominal damages produced); *see also Seymour v. Hull Moreland Engineering*, 605 F.2d 1105, 1116–17 (9th Cir.1979) (affirming district court's reduction of attor-

ney's fee from $20,000 to $10,000, when the amount of recovery was most important consideration to district court). The total attorney's fee under the traditional analysis would therefore be $126,056.

## IV

The plaintiff requests $7,160.83 for costs, including those costs allowed by 28 U.S.C. § 1821. Defendants do not object. These are appropriate and will be awarded. Plaintiff, however, also requests a further $12,941.79 for experts' fees, and defendants properly object to this request. This money, according to plaintiff, is necessary to reimburse plaintiff (or its lawyers) for the out-of-pocket expenses of paying two accounting experts and one economics expert for their preparation, deposition, and trial testimony. Only one of the three actually testified at trial, an accounting expert. The other two did not appear at trial.

Plaintiff's lawyers submitted what appears to be the bills they received from the experts. These bills are singularly uninformative. All they contain is the number of hours worked in a given period and the rate charged per hour. (They also give the mileage and parking expenses.) The Court cannot ascertain what the experts did.[7]

Under statute, a plaintiff may be awarded the following costs for witnesses:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

.     .     .     .     .

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from

---

**7.** On the basis of this information, the Court cannot determine that *any* costs for these experts, if such costs are not included in the $7,160.83 amount awarded, are properly recov-

erable for the experts' time at deposition or trial. Plaintiff must bear the burden of its failure to show its entitlement to these costs.

the place of attendance at the beginning and end of such attendance or at any time during such attandance.

.    .    .    .    .

(c)(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5 [5 USCS § 5704], for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

.    .    .    .    .

28 U.S.C. § 1821 (Supp).

█ The experts' fees requested by plaintiff are not included within 28 U.S.C. 1821. The Court excludes them for that reason. *See Twentieth Century Fox Film Corp. v. Goldwyn,* 328 F.2d 190, 224 (9th Cir.1964), *cert. denied,* 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964), the only Ninth Circuit case to deal with expert fees as costs, held that accounting fees are not recoverable. This refusal to allow recovery of expert fees is the majority rule among the circuits that have considered the question. *See Quy v. Air America, Inc.,* 667 F.2d 1059, 1066–68 (C.A.D.C.1981); *State of Illinois v. Sangamo Construction Co.,* 657 F.2d at 866–67 (7th Cir.); *Bosse v. Litton Unit Handling Systems,* 646 F.2d

689, 695 (1st Cir.1981); *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). The reasoning behind the rule is compellingly spelled out in both *Quy,* 667 F.2d at 1067–68, and *Sangamo,* 657 F.2d at 866–67.

Two circuits, relying on dictum by the Supreme Court,[8] have allowed for the recovery of expert fees, but have restricted this to those cases in which the testimony of the expert is indispensable or crucial to the issue decided below. *See Paschall v. Kansas Star Co.,* 695 F.2d 322, 338 (8th Cir.1982); *Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d 201, 204–06 (3rd Cir.1981). Even if this were the test, the plaintiff would fail. Only one of the experts testified at trial; the testimony on the two who did not testify cannot be crucial to the resolution of any issues. As for the accounting expert who testified, he was unable to testify as to the accuracy of the underlying assumptions of the damage study about which he testified. His testimony cannot be regarded as indispensable.

### V

For the reasons set forth above, the Court finds that the plaintiff is entitled to recover a reasonable attorney's fee of $105,612.00 for the services of its counsel in this litigation and $7,160.83 in costs. Accordingly,

IT IS HEREBY ORDERED that defendants American Multi-Cinema, Inc. and American Multi-Cinema Film Marketing shall pay to plaintiff Exhibitor's Service, Inc. reasonable attorney's fees in the amount of $105,612.00 and costs in the amount of $7,160.83.

---

**8.** These circuits argue that in *Farmers v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964), the Supreme Court held that Federal Rule of Civil Procedure 54 authorizes judges to award costs not specifically enumerated in 28 U.S.C. § 1821.

> Items proposed by winning parties as costs should always be given careful scrutiny .... Therefore the discretion given district judges to tax costs should be sparingly exercised with

reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation.

379 U.S. at 235, 85 S.Ct. at 416. But in *Farmers,* the Supreme Court actually affirmed the lower court's refusal to award as costs transportation of witnesses from Saudi Arabia. It did not touch upon the question of expert fees.